### JOSEPH DOUGHTY *vs.* JOHN B. OWEN, use, &c.

A slave belonging to J. D. committed a crime punishable with death; but before he was arrested, and after process had been issued to arrest the slave, his master sent him to an adjoining county, and after detailing the circumstances under which the slave had been taken off, sold him to D., who executed his note for a part of the purchase-money, upon which suit was brought by the vendor, and upon the trial of the cause, the defendant D. asked the court to charge the jury: "That if the jury believed from the evidence that the note was given for a slave which at the time it was executed the slave was under a charge of having attempted to commit a rape in the county of J., but to prevent his arrest he was run to the county of K., and there sold to defendant, that the contract is against public policy, and void." *Held*, that it was error in the court below to refuse to give the instruction asked.

Where a slave commits a crime, the private rights of the master must yield to the superior rights of the State; and the master can legally exercise no right over a slave which would interfere with the State in discharging her duty to society.

The master cannot legally remove, or cause to escape beyond the jurisdiction of an officer having process to arrest him, a slave chargeable with a high criminal offence, to prevent an arrest or prosecution.

The offence of aiding a criminal to escape is complete under our statute, so soon as such criminal is enabled to avoid arrest by virtue of process in the hands of an officer at the time of the escape.

The purchaser of the slave, with a knowledge of the crime with which he was charged, was but a new party added to those who had violated the law in running off the slave.

The master and slave stand alike in law when they commit crimes, and no more protection can be given to the one than the other. *Held*, that it is an equal violation of the law to assist any one chargeable with a high criminal offence to escape from the jurisdiction of legal process.

In error from the circuit court of Kemper county; Hon. John Watts, judge.

Doughty v. Owen.

The facts set out in the bill of exceptions, are substantially these: Owen owned a negro, charged with the commission of a rape in Jasper. To avoid arrest, and to elude the law, the negro was run to Kemper county, and sold to Doughty, who was cognizant of·these facts, and purchased him at a greatly reduced price, $400; $100 of it he paid, $100 he agreed to pay in cattle, and for the balance gave his note, on which this suit was brought. The negro, after sale, escaped from Doughty, fled to Jasper, was apprehended on the criminal charge, put in jail, broke it, and Doughty has never heard of him since.

Defendant asked the court to charge the jury, that such a contract as is stated above, was void as against public policy, which was refused; and verdict for the plaintiff, and writ of error to this court.

*D. C. Glenn,* for appellant:

It is the policy of our law that offenders shall be brought to trial, and it was with this state, of things that the legislature allows a master compensation for his slave property, as in cases like this, where public policy and public justice and the laws of the land demand it from him.

This being so, every note or security given, every contract made to aid or farther carry out or consummate the illegal intent of the owner, is necessarily void. It matters not that all the parties to the contract are cognizant to the illegal intent. They may be innocent, or they may be "*particeps criminis,*" it matters not. The rule was not made for their protection or their punishment. The aim is higher — the vindication of public policy and public justice; and this is done by absolutely avoiding all contracts arising out of, and springing from, or connected with, the illegal intention.

The above I believe to be sound law, and I have only to refer to H. C. 556, 981; 2 Kent; 5 Yerger; Chitt. on Con., 220; 5 Johnson; 4 Humph.; 5 How. 80, 769; 4 Halstead; 7 How. 14, and cases cited.

I therefore ask a reversal of the case, and a new trial.

*Guion & Baine,* for appellee.

The defence sought to be made in this case, was, that the negro had been sold while under charge of a criminal offence. The defendant denied that he concealed the fact of the charge at the time of sale. Then of course, the defendant himself being judge, he failed to make out his case. But had he proved it, such could only have gone in mitigation of damages, and would not have avoided the contract.

Mr. Justice FISHER delivered the opinion of the court.

This was an action of assumpsit in the circuit court of Kemper county, in the name of Jno. B. Owen, for the use of Jno. Dooley, against Joseph Doughty, in which a judgment was rendered for the plaintiff below.

The action was defended on the ground, that the note upon which the action was brought, was given for part of the purchase-money agreed to be paid by Doughty for a slave sold by the plaintiff in violation of law.

The testimony bearing directly upon this part of the case, is in these words, to wit: " That the consideration of the note sued upon was for the purchase of a negro who at the time of the purchase was under a charge of an attempt to commit a rape in Jasper county; that a warrant for his arrest upon that charge was in the hands of the sheriff of that county; that Dooley, the usee and owner of the slave, employed Owen, the nominal plaintiff, and another person, the son-in-law of Dooley, to run the negro from Jasper county, and sell him, so as to avoid his arrest and trial for the offence charged; that Owen and his assistant brought the negro to Kemper county, pursuant to the instruction of Dooley; that Owen communicated fully to Doughty all the circumstances under which the negro was run off, and the purpose for running him off." Owen, at the time of the sale, also cautioned the purchaser not to let the negro get back into Jasper county, as the sheriff of that county had in his hands a warrant for the arrest of said slave, &c. To which Doughty replied, that he intended in two or three days " to steal off and sell him."

Upon this state of facts, the court was asked to give the following instruction to the jury: " That if the jury believe

from the evidence, that the note sued upon was given for a slave ; that at the time the note was given, the slave was under a charge of having attempted to commit a rape in Jasper county; that to prevent his arrest and prosecution, he was run from that county to this, (Kemper,) and sold to the defendant, the contract is against public policy, and void.    This instruction the court refused to give, and its refusal presents the only error which it is important for us to consider." The instruction being entirely applicable to the testimony introduced before the jury, the only question which it presents is, whether it announced a correct rule of law, which should have been given by the court to guide the jury in rendering their verdict.

The important question which it involves is this: How far the alleged crime of the slave abridged the master's right to dispose of him?    As a general rule a man may dispose of his property, and exercise all other rights, to the extent that the law does not restrain him in so doing.    This restraint is only imposed to enable the government to discharge its duty to the citizen in protecting him in the enjoyment of certain rights, which might be endangered if individual rights in the particular case were permitted to be exercised.

The State has the unquestionable prerogative to arrest and bring to trial, before the proper tribunal, those who are legally charged with the commission of crime.    This is not merely a power which she may exercise at pleasure, but a duty which she ought to exercise to secure the community in the enjoyment of rights, which can only be protected by punishing those who violate them ; and it is in this way only that the government undertakes to afford proper protection to the rights of its citizens.

It is therefore the policy of the law, that he who commits a crime, should be arrested and brought to trial; otherwise the law could not be administered.    As a general rule, the State in exercising this power, or rather performing this duty, can only look to those private rights which pertain to the accused himself, in giving him such liberty and such trial as he is entitled to, under the constitution and laws of the country.    When a slave commits a crime, the private rights of the master must

yield to the superior rights of the State, and he can only be influenced by those considerations which influence all good citizens, a fair and faithful administration of the law. The master can legally exercise no right which will interfere with the State in discharging her duty to society. If, therefore, the slave were legally charged with the commission of a high crime, and a warrant issued for his arrest, the master could not legally obstruct the officer in executing it. He could not legally aid the slave in escaping beyond the jurisdiction of the officer having the process to arrest him, *a fortiori* he could not remove or cause the slave to be removed to prevent an arrest or prosecution for the alleged crime. The offence of aiding a criminal to escape is complete under the statute, as soon as such criminal is enabled to avoid an arrest by virtue of the process in the hands of the officer, at the time of the escape, and by virtue of which he could have been arrested before the assistance was afforded to him, the language of the statute being, aid given "with intent and in order that he may avoid or escape from arrest, or trial, or conviction, or punishment," &c. Hutch. Code, p. 981, § 7. Why was the offender in this case removed from Jasper county? The testimony says, to prevent the arrest and prosecution. The law was, therefore, clearly violated, both in the act and motive of the owner of the slave in removing him beyond the jurisdiction of the sheriff of Jasper county. It may be true that the owner was not so much influenced by considerations of mercy to the slave, or to defeat the administration of the criminal law, as by considerations of private gain. It is, however, immaterial which consideration influenced him ; his acts had not only a tendency to defeat the policy of the law in bringing offenders to trial, but were at the time by him so intended. The purpose for which the slave was removed to Kemper county being illegal, the possession of him in that county by the agents of the master was also illegal. They could, not under the facts appearing by the testimony or assumed by the instruction, legally permit the slave to remain in that county, and if they could not legally permit him to remain there before the sale, they could not sell or transfer the possession in another county to defeat the arrest and prosecution of

Doughty *v.* Owen.

the offender. The purchaser was but a new party added to those who originally set out to violate the law; and so far from acquiring any present right to the property, he only became bound to perform the duty which the law manifestly required of his vendors, to return the offender to the officer from whose jurisdiction he had been run to avoid an arrest and prosecution. His purchase, under the circumstances, was but an agreement to continue the violation of the law, and to render nugatory its process.

If a correct principle of law is not laid down by the instruction, then its opposite must be true. It would then, in substance, read thus. A slave accused of having committed a crime punishable by the law with death, and the sheriff of the county in which the alleged crime was committed, having in his hands a warrant commanding him to arrest the said slave, may, by the superior vigilance of the master, be legally and properly removed to another county, and there sold, for the avowed purpose of preventing the arrest and prosecution for the crime, and the courts of the country will uphold such contract. To show the correctness of the instruction, it is only necessary to state the opposite. Any other rule would place the criminal code as to slaves completely at the mercy of their masters, and society could only be protected against the enormities of this class of our population in those cases in which the private interest of their masters would not be prejudiced by consenting that the law might be administered, and its penalties inflicted on the guilty. The master himself has no such rights or exemptions from punishment if he commit crime. They occupy common ground. They have violated some personal right deemed sacred, which it is the highest duty of the government to protect, and which can only be protected by inflicting the penalty of the law on the offender.

Thus we are of opinion that the court erred in refusing the instruction, and that the judgment ought to be reversed.

Judgment reversed, new trial granted, and cause remanded.